UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| UNITED THERAPEUTICS CORPORATION,<br><br>        Plaintiff,<br><br>  v.<br><br>LIQUIDIA TECHNOLOGIES, INC.,<br><br>        Defendant. | Lead Case: 1:20-cv-00755-RGA-JLH (D. Del.) |

**NON-PARTY LGM PHARMA'S MOTION TO QUASH
SUBPOENAS AND TO TRANSFER TO DISTRICT COURT OF DELAWARE
AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 45, non-party LGM Pharma, LLC ("**LGM Pharma**") moves to quash two subpoenas issued by United Therapeutics, Corporation ("**UTC**") in *United Therapeutics Corporation v. Liquidia Technologies, Inc.*, Civil Action No. 1:20-cv-00755-RGA, an action pending before Judge Richard Andrews in the United States District Court for the District of Delaware (the "**Underlying Litigation**"). One subpoena is for documents (the "**Document Subpoena**") and the other is for deposition testimony (the "**Deposition Subpoena**").[1] UTC is the sole plaintiff in the Underlying Litigation, and Liquidia Technologies, Inc. ("**Liquidia**") is the sole defendant. LGM Pharma is not a party to the Underlying Litigation and bears little, if any, relevance to the issues currently pending in that action. UTC's subpoenas should be quashed in their entirety because they seek documents and information not relevant to any claims or defenses, they seek duplicative information already produced or compelled from

---

[1] Copies of the subpoenas, which were served on or about July 19, 2021, are attached as **Exhibit 1**.

1

other sources in the Underlying Litigation, and they are unduly burdensome on non-party LGM Pharma because they are overly broad and not limited in time.

LGM Pharma further requests that this motion be transferred to the United States District Court for the District of Delaware, as consented to by UTC. Several circumstances warrant the transfer, including the prior resolution of duplicative discovery requests in the Underlying Litigation and the complexity of the issues, with which the Delaware judge already is familiar. Finally, considering the undue burden imposed on non-party LGM Pharma in responding to UTC's improper subpoenas, LGM Pharma also respectfully requests an award of its reasonable attorneys' fees incurred under Rule 45(d)(1).

## I.    BACKGROUND

The claims at issue in the Underlying Litigation involve allegations by UTC of patent infringement by Liquidia related to Liquidia's filing of a Section 505(b)(2) New Drug Application with the U.S. Food and Drug Administration for a new drug, LIQ861, an inhaled powder formulation of treprostinil for the treatment of pulmonary hypertension.  UTC has asserted the infringement of three patents in the Underlying Litigation: U.S. Patent No. 9,593,066 ("**the '066 patent**"); U.S. Patent No. 9,604,901 ("**the '901 patent**"); and U.S. Patent No. 10,716,793 ("**the '793 patent**").[2]  The '066 and '901 patents include product-by-process claims directed to treprostinil and pharmaceutically acceptable salts of treprostinil, and methods for manufacturing treprostinil and its salts.  The '793 patent claims a method of treating pulmonary hypertension by administering inhaled treprostinil.  The Underlying Litigation has been pending for over a year, with over 140 docket entries, including multiple discovery disputes all resolved by the District Court of Delaware and involving the same documents and subject matter sought here, completed

---

[2] Copies of the asserted patents are attached as **Exhibit 2**.

claim construction, and fact discovery set to close in less than two months.

LGM Pharma is an administrative intermediary working on behalf of Yonsung Fine Chemicals ("**Yonsung**"), a Korean drug manufacturer that makes the treprostinil sodium used in Liquidia's LIQ861 product.  LGM Pharma is not a party to the Underlying Litigation, does not manufacture treprostinil sodium, is not in possession, custody or control of Yonsung's Drug Master File ("**Yonsung's DMF**")[3] for treprostinil sodium, and is not involved in the development or administration of Liquidia's LIQ861 drug product.

In the Underlying Litigation, Liquidia already has produced over 1,000,000 pages of documents to UTC, including documents on Yonsung's manufacture of treprostinil sodium and other documents now sought by UTC from LGM Pharma.  *See* **Exhibit 3** at 5-6.  Further, UTC is pursuing discovery from Yonsung directly in the Underlying Litigation via The Hague Convention, and the District Court of Delaware already has issued UTC's Letter of Request for International Judicial Assistance ("**Letter Request**") on June 21, 2021 for the vast majority of documents and witness testimony UTC now seeks from non-party LGM Pharma.  *See* **Exhibits 4, 5**.

Despite this record, LGM Pharma improperly is being targeted for information relating to Yonsung, and the subpoenas should be quashed.  Because the District Court of Delaware already is intimately familiar with the underlying factual issues, LGM Pharma, with UTC's consent, moves for the transfer of this motion to the same court as the Underlying Litigation.

---

[3] "Drug master files (DMFs) are submissions to FDA used to provide confidential, detailed information about facilities, processes, or articles used in the manufacturing, processing, packaging, and storing of human drug products." *Drug Master Files (DMFs)*, U.S. FOOD & DRUG ADMINISTRATION, https://www.fda.gov/drugs/forms-submission-requirements/drug-master-files-dmfs (last visited July 28, 2021).

**II.      TRANSFER TO THE ISSUING COURT IN THE DISTRICT OF DELAWARE IS WARRANTED**

As a threshold issue, pursuant to Rule 45(f), this motion should be transferred to the issuing court of the District of Delaware because (i) LGM Pharma, the subpoena recipient, and UTC, the party that issued the subpoena, consent to the transfer, and (ii) several other circumstances warrant transfer to the issuing court.  Generally, subpoena-related motions are made in the court where compliance is required "[t]o protect local nonparties."  FED. R. CIV. P. 45(f) Advisory Committee Notes (2013).  However, when the subpoenaed non-party consents, transfer of the subpoena-related motion to the issuing court is permitted.  FED. R. CIV. P. 45(f) ("When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court *if the person subject to the subpoena consents* or if the court finds exceptional circumstances.") (emphasis added).  A variety of factors, moreover, weigh in favor of transferring a subpoena-related motion, such as consent of the party issuing the subpoena, the duration and complex history of the underlying civil case, the risk that the same issues raised in the subpoena at issue are likely to arise in several districts, the risk of inconsistent discovery rulings, and judicial economy and efficiency.  *See Dispatch Printing Co. v. Zuckerman*, No. 16-cv-80037, 2016 WL 335753, at *2-4 (S.D. Fla. Jan. 28, 2016); *see also N. Atl. Operating Co. v. Dunhuang Grp.*, No. 18-mc-154, 2018 WL 3381300, at *2-3 (D. Del. July 11, 2018).

**A.      Both LGM Pharma and UTC Consent to Transfer this Motion to the District Court of Delaware**

Because both LGM Pharma and UTC consent to transfer this motion to the issuing court, transfer is warranted on that basis alone.  *See, e.g.*, *Pfizer, Inc. v. Mylan Inc.*, No. 8:16-mc-47, 2016 WL 3021911, at *1 (M.D. Fla. May 26, 2016) ("As [the subpoena recipient] does not oppose Plaintiffs' Motion to Transfer, transfer is appropriate under Federal Rule of Civil Procedure 45(f)."); *Wei Wang v. Shen Jianming*, No. 2:19-cv-274, 2019 WL 2270949, at *3 (M.D. Fla. May

4

10, 2019), *report and recommendation adopted,* No. 2:19-cv-274, 2019 WL 2269953 (M.D. Fla. May 28, 2019) ("Given [the subpoena recipient's] consent and the Plaintiffs' non-opposition, the Court finds it appropriate for the subpoena-related motions in this case to be transferred to the [issuing court]."). Rule 45(c)'s concern for "local nonparties" in requiring that subpoena-related motions be decided in the court where compliance is required is therefore not applicable to the present dispute.

### B. The District Court of Delaware is Better Suited to Resolve LGM Pharma's Motion to Quash

Several other factors warrant transfer of LGM Pharma's motion to quash to the District Court of Delaware. The case has been litigated for over a year, claim construction has been completed, there are over 140 docket entries in the Underlying Litigation, and the close of fact discovery is fast approaching in less than two months. *See Edwards v. Maxwell*, No. 16-61262, 2016 WL 7413505, at *2 (S.D. Fla. Dec. 22, 2016) (granting motion to transfer due to "large amount of docket entries," "complexity of issues," and "the danger of impeding on [issuing court's] discovery cutoff deadline"); *N. Atl. Operating Co.*, 2018 WL 3381300, at *2 ("Given [the issuing court's] degree of involvement and familiarity, allowing the issuing court to resolve enforcement of the subpoena would promote judicial economy and avoid the risk of inconsistent rulings."). The District Court of Delaware is also very familiar with the factual, legal, and discovery related issues in the Underlying Litigation, as that Court already has ruled on an early motion to dismiss (*see* **Exhibit 6**), claim construction (*see* **Exhibit 7**), and several discovery disputes, including discovery disputes directed to the same subject matter UTC now seeks from LGM Pharma via its improper subpoenas (*see* **Exhibit 4**).

For instance, UTC seeks "[a] copy of each version of Yonsung's Treprostinil Sodium DMF" (*see* Subpoena Document Request No. 7) from LGM Pharma. However, in ruling on UTC's

Motion for International Judicial Assistance, the District Court of Delaware issued UTC's Letter Request to Yonsung for the very same copies of Yonsung's DMF (*see* Exhibit 5, D.E. 127-1 at 13 (Letter Request No. 1)).  Similarly, UTC seeks documents and witness testimony from LGM Pharma as to the storage and shipping requirements for Yonsung's treprostinil sodium (*see* Subpoena Document Request No. 3 and Deposition Topic No. 3).  However, in ruling on UTC's Motion for International Judicial Assistance, the District Court of Delaware issued UTC's Letter Request to Yonsung for "[d]ocuments concerning the storage and shipping conditions for any Treprostinil Product synthesized by Yonsung for or on behalf of Liquidia, including the treprostinil sodium API . . ." (*see* Exhibit 5, D.E. 127-1 at 18 (Request No. 9)).  Considering the District Court of Delaware already has ruled on issues similar to the present motion, the Southern District of Florida risks "disrupting the issuing court's management of the underlying litigation, as [the] court has already ruled on issues presented by the motion" by ruling on LGM Pharma's subpoena-related motion.  *Pfizer*, 2016 WL 3021911, at *1; *see also N. Atl. Operating Co.*, 2018 WL 3381300, at *3.  For these reasons, transfer of LGM Pharma's subpoena-related motion to the District Court of Delaware is warranted.

III.   **THE UTC SUBPOENAS SHOULD BE QUASHED FOR SEVERAL INDEPENDENT REASONS**

UTC's subpoenas subject non-party LGM Pharma to undue burden and should be quashed in their entirety.  First, the documents and testimony sought in UTC's subpoenas are duplicative of documents already produced by Liquidia and/or documents and testimony already compelled from Yonsung in the Underlying Litigation.  Second, UTC's subpoenas improperly seek documents and witness testimony wholly irrelevant to the validity or infringement of UTC's asserted patents in the Underlying Litigation—the core claims and defenses at issue in patent infringement actions.  UTC's requests further seek confidential information of third party

Yonsung, and third parties with no relationship to the Underlying litigation.  Finally, UTC's subpoenas subject LGM Pharma to undue burden because they are extremely broad, not limited to any time period, and lack reasonable particularity as to the documents or witness testimony requested.  UTC's failure to take steps to avoid imposing an undue burden on non-party LGM Pharma is especially egregious, considering that the concern for unwanted burdens thrust upon non-parties is a factor entitled to "special weight" in evaluating the balance of competing needs. *ADP, LLC v. Ultimate Software Grp., Inc.*, No. 17-CV-61272, 2017 WL 7794274, at *1 (S.D. Fla. July 26, 2017); *see also Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 218 F.R.D. 423, 424 (D. Del. 2003) ("It is incumbent upon counsel in the first instance to order discovery demands, particularly against non-parties, in such a way that the burdens of giving evidence are reasonable, under all of the circumstances presented.").

### A. UTC's Subpoenas Seek Documents and Witness Testimony Duplicative of Information Already Produced or Compelled in the Underlying Litigation

UTC's subpoenas should be quashed as duplicative because they are directed to previously produced information and/or discovery already ordered by the District Court of Delaware upon UTC's various motions to compel in the Underlying Litigation.  "The availability of similar documents and information is itself a separate basis to quash . . . subpoenas under Rule 26." *Am. Fed'n of State, Cnty. & Mun. Emps. (AFSCME) Council 79 v. Scott*, 277 F.R.D. 474, 478 (S.D. Fla. 2011); *see also Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. C.A. 04-1371 JJF, 2006 WL 2604540, at *3 (D. Del. Aug. 24, 2006) (granting motion to quash subpoena that was "cumulative to and duplicative of the previous subpoenas issued by [the Plaintiff]").  As explained previously, Liquidia already has produced over 1,000,000 pages of documents to UTC, and the District Court of Delaware already has issued a Letter Request to Yonsung. *See* Exhibits 4, 5.

First, the documents and witness testimony requested by UTC as to each version of Yonsung's DMF (*see* Subpoena Document Request No. 7 and Deposition Topic No. 6) and "[a]ll documents and communications" between LGM Pharma and Yonsung regarding Yonsung's DMF (*see* Subpoena Document Request No. 7) are duplicative of documents compelled by the District Court of Delaware or already produced by Liquidia.  The Letter Request issued by the District Court of Delaware call for Yonsung to produce "[t]rue and accurate copies of Yonsung's complete (Closed) Drug Master File No. 27680 ('Yonsung's DMF'), as filed with the U.S. Food and Drug Administration, further identified as corresponding with the following version information: (a) current version, *i.e.*, the most recently-updated version of Yonsung's DMF, (b) 'Version 5.0' of Yonsung's DMF, and (c) any interim versions of Yonsung's DMF filed between 'Version 5.0' and the most current version."  Exhibit 5, D.E. 127-1 at 13 (Letter Request No. 1).  Further, Liquidia already has produced complete copies of Yonsung's current DMF, as well as communications between Liquidia and Yonsung regarding Yonsung's DMF, responsive to UTC's Request for Production in the Underlying Litigation seeking Yonsung's DMF and communications or contacts between Liquidia and any third party concerning the DMF.  *See* Exhibit 3 at 5-6.  Finally, UTC could have taken a less burdensome route and requested communications between LGM Pharma and Yonsung regarding its DMF when it submitted its Letter Request to Yonsung.  Having chosen not to do so is not a reason now to unduly burden non-party LGM Pharma.

Moreover, witness testimony from LGM Pharma regarding Yonsung's DMF would be unduly burdensome and of minimal relevance considering LGM Pharma is not the DMF holder, had no participation in the development or filing of Yonsung's DMF, and does not manufacture or otherwise utilize Yonsung's treprostinil sodium, which is the subject of the DMF.  This is particularly true given that the District Court of Delaware already granted UTC's request to depose

Yonsung on the topic of "the process used for manufacturing treprostinil sodium described in Yonsung's DMF No. 27680" (*see* Exhibit 5, D.E. 127-1 at 12), and UTC has the ability to additionally seek such information from Liquidia, a party to the Underlying Litigation.  UTC thus knows that any potential relevance of documents, communications, and deposition testimony concerning Yonsung's DMF have been or will be produced and, as such, obtaining the same discovery from LGM is unduly burdensome as it would require non-party LGM Pharma to conduct a comprehensive ESI collection, search, and production.

To the extent UTC contends that LGM Pharma must conduct a side-by-side comparison of documents it may have against those previously produced, duplicity does not require strict identity. *See Am. Fed'n of State, Cnty. & Mun. Emps. (AFSCME) Council 79*, 277 F.R.D. at 478.  Moreover, UTC's document requests pertain to documents governed by the FDA and thus the information UTC seeks from LGM Pharma related to documents submitted to the FDA are duplicative of documents UTC has requested from Yonsung and already received from Liquidia.

Second, the documents and witness testimony requested by UTC as to the storage conditions for treprostinil sodium imported from Yonsung to Liquidia (*see* Subpoena Document Request No. 3 and Deposition Topic No. 3) are, for the same reasons discussed above, duplicative of documents compelled by the District Court of Delaware or already produced by Liquidia.  The Letter Request issued by the District Court of Delaware requires Yonsung to produce "[d]ocuments concerning the storage and shipping conditions for any Treprostinil Product synthesized by Yonsung for or on behalf of Liquidia, including the treprostinil sodium API as described in Yonsung's DMF and referenced in NDA No. 213005 and the intermediates used in the synthesis of treprostinil sodium API, including but not limited to stability testing supporting or detracting from the necessity for the specific storage and shipping conditions."  Exhibit 5, D.E. 127-1 at 18

(Letter Request No. 9); *see also id.* (Letter Request No. 8).  These are the same documents UTC now seeks from LGM Pharma.  Further, Liquidia already has produced documents from Yonsung and Liquidia that describe the shipping and storage requirements for Yonsung's treprostinil sodium, responsive to UTC's Request for Production in the Underlying Litigation for documents concerning the shipping or importation of Liquidia's proposed LIQ861 product and treprostinil to be used in Liquidia's LIQ861 product.  Exhibit 3 at 5-6.  UTC cannot establish any basis to seek the same information from yet a third source.

Moreover, all these requests seek Yonsung confidential information.  These requests should, therefore, be quashed and discovery of these documents should be sought directly from Yonsung, a step UTC has already undertaken in its Hague Request to Yonsung.

Lastly, the documents requested by UTC that relate to "agreements and/or memoranda of understanding, between [LGM Pharma] and Liquidia regarding purchasing, importation, or brokering activities relating to treprostinil sodium" (*see* Subpoena Document Request No. 2) already have been produced by Liquidia directly in the Underlying Litigation—UTC has not complained of any deficiency with Liquidia's document production in this regard.  Further, the witness testimony requested by UTC as to the "history and current state of LGM's relationship with Liquidia" (Deposition Topic No. 2) can be attained by deposing Liquidia witnesses rather than burdening non-party LGM Pharma.  Without first attempting to seek such discovery from Liquidia, UTC has no basis to burden a non-party.

In sum, there is simply no basis for UTC to seek the same discovery from a non-party source that it has already received from Liquidia, that it could obtain from Liquidia, and/or that it

already has compelled from Yonsung.[4]  *See Am. Fed'n of State, Cnty.*, 277 F.R.D. at 478; *Power Integrations, Inc.*, 2006 WL 2604540, at \*3.  Considering the duplicative nature of UTC's request for documents and witness testimony from LGM Pharma, requiring LGM Pharma to prepare a witness for testimony and conduct a comprehensive ESI collection, search, and production would be unduly burdensome and of minimal relevance to the Underlying Litigation.

### B. UTC's Subpoenas Seek Documents and Witness Testimony Not Relevant to any Claim or Defense in the Underlying Litigation

UTC's subpoenas also should be quashed as unduly burdensome because they improperly seek documents and witness testimony irrelevant to any issue in the Underlying Litigation.  *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1329 (11th Cir. 2020) ("[A] subpoena issued under Rule 45 should be quashed to the extent it seeks irrelevant information."); *see also Power Integrations, Inc.*, 2006 WL 2604540, at \*3 ("The Court further concludes that the discovery sought by the . . . subpoena which is not cumulative is irrelevant to the present litigation.").  UTC's Document Requests and Deposition Topics are not limited to issues relevant to Liquidia's NDA or UTC's asserted patents in the Underlying Litigation, but instead seek several categories of documents and witness testimony not relevant to any issue.   Moreover, UTC's requests seek confidential information of further non-parties, and to the extent such documents exist, invite further litigation by those irrelevant third parties to protect their confidential information from disclosure to UTC.

As discussed above, the Underlying Litigation concerns claims and defenses associated with patent infringement and validity.  *See* **Exhibit 9**, *OpenDNS, Inc. v. Select Notifications Media, LLC*, No. C11-05101, D.I. 111, at 4 (N.D. Cal. June 5, 2013) ("The core issues of this patent

---

[4] UTC is also seeking the same discovery from non-party Globepharm Consulting, Inc. ("**Globepharm**").  Copies of the Globepharm Subpoenas are attached as **Exhibit 8**.

infringement action are infringement, damages, and validity, whereas the information sought by the subpoenas concerns a satellite issue that has already been resolved."). Invalidity analysis focuses on how a person of ordinary skill in the art ("**POSA**") would interpret the "prior art" and the patent specifications as of patents' effective filing dates—in this case, December 17, 2007 ('066 and '901 patents) and May 15, 2006 ('793 patent). Infringement analysis focuses on whether the accused product or process meets each and every claim limitation of the asserted patents.

First, the documents and witness testimony requested by UTC as to LGM Pharma's relationships, agreements, purchase orders, and communications with Yonsung and Liquidia (*see* Subpoena Document Request Nos. 1-2, and 6 and Deposition Topic Nos. 1-2 and 5) are completely irrelevant to validity and infringement. LGM Pharma's relationships, agreements, purchase orders, and communications with Liquidia and Yonsung have no bearing on how a POSA would interpret the prior art or specifications of UTC's asserted patents as of their effective filing dates. Nor do LGM Pharma's relationships, agreements, purchase orders, and communications have any bearing on whether the manufacture and administration of LIQ861 meet the claim limitations of UTC's asserted patents. And, as discussed above, UTC has obtained and will further obtain documents and testimony directly from Liquidia and Yonsung that bear on these issues. Discovery into LMG Pharma's relationships, agreements, purchase orders and communications would shed no further light on the infringement and validity issues in the Underlying Litigation.

Similarly, the documents and witness testimony requested by UTC as to "input," "suggestions, assistance, or advice" allegedly provided by LGM Pharma to Yonsung or Liquidia (*see* Subpoena Document Request Nos. 3 and 9 and Deposition Topic Nos. 4 and 7) have no relevance to validity or infringement. Any alleged "input," "suggestions, assistance, or advice" provided by LGM Pharma to Yonsung or Liquidia as to storage and manufacturing would not shed

light on how a POSA would interpret the prior art or specifications of UTC's asserted patents as of their effective filing dates.  Nor would "input," "suggestions, assistance, or advice" provided by LGM Pharma to Liquidia and Yonsung make Liquidia's alleged infringement of UTC's asserted patents any more or less likely.  Indeed, the issue for infringement in a Hatch-Waxman case such as the Underlying Litigation "is focused on a comparison of the asserted patent[s] against the product that is likely to be sold following ANDA approval."  *Alcon Rsch. Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1186 (Fed. Cir. 2014) (citations omitted); *see also id*. ("[A]n ANDA specification defining a proposed generic drug in a manner that directly addresses the issue of infringement will control the infringement inquiry.") (citation omitted).  Liquidia's proposed product and the treprostinil sodium used in Liquidia's proposed product are defined by Liquidia's NDA and Yonsung's DMF—both of which already have been produced to UTC.

Finally, the documents and witness testimony requested by UTC as to LGM Pharma's storage conditions of treprostinil sodium sold or supplied to **buyers other than Liquidia** have no relevance to infringement or validity.  *See* Subpoena Document Request No. 4 ("Documents sufficient to show the storage conditions for treprostinil sodium (during shipment or while at a facility) sold or supplied to other buyers (besides Liquidia)."); Deposition Topic No. 3 ("Storage condition requirements for treprostinil sodium from Yonsung, including any requirements relating to temperature, for treprostinil sodium supplied to Liquidia and/or other parties."). To begin with, Subpoena Document Request No. 4 and Deposition Topic No. 3 are not limited to treprostinil sodium made by Yonsung, and thus to the extent any such documents exist, they are completely irrelevant to *any* issue in the Underlying Litigation.  To the extent such documents exist, LGM Pharma's method of storing treprostinil sodium, made by a company **other than Yonsung** and sold **to other buyers than Liquidia** bears no relevance to how the treprostinil sodium **used in Liquidia's**

13

***LIQ861*** is stored.  Moreover, these requests improperly seek documents, to the extent they exist, that constitute confidential information of third parties, beyond Yonsung and LGM Pharma, with no relation to the underlying dispute.  LGM Pharma should not be compelled to search for and produce any such documents concerning additional third parties' confidential information.

Given that UTC already is in possession of the requested discovery, or will receive it via discovery they moved to compel, UTC cannot establish any need to obtain the same (yet broader) information from LGM Pharma; therefore, the requests can only be calculated to harass or embarrass LGM Pharma.  *See Metro-Goldwyn-Mayer*, 218 F.R.D. at 424 ("It is incumbent upon counsel in the first instance to order discovery demands, particularly against non-parties, in such a way that the burdens of giving evidence are reasonable, under all of the circumstances presented.").  "[T]he party issuing the subpoena bears the burden of proving the requests are relevant." *Larweth v. Magellan Health, Inc.*, No. 6:18-cv-823, 2019 WL 11866498, at *11 (M.D. Fla. July 16, 2019).  Further, UTC has no basis to assume that LGM Pharma sells or supplies treprostinil sodium, made by a company other than Yonsung, to companies other than Liquidia, and thus UTC's Subpoena Document Requests and Deposition Topics amount to pure speculation and should be quashed.  *Future Metals LLC v. Ruggiero*, No. 21-CIV-60114, 2021 WL 1920396, at *3 (S.D. Fla. May 12, 2021) ("Courts should not grant discovery requests based on pure speculation that amount to nothing more than a 'fishing expedition' into actions . . . not related to the alleged claims or defenses."); *Apex Fin. Options, LLC v. Gilbertson*, No. 21-023, 2021 WL 965509, at *5 (D. Del. Mar. 15, 2021) (granting motion to quash, noting "[i]t is a fishing expedition for which Plaintiffs have presented no factual support, only conclusory arguments").

### C.   UTC's Subpoenas Subject Non-Party LGM Pharma to Undue Burden and Expense

Lastly, UTC's subpoenas should be quashed in their entirety because, as discussed above,

they seek duplicative and/or non-relevant documents and witness testimony from non-party LGM Pharma that are unduly burdensome and not proportional to the needs of the case.  FED. R. CIV. P. 45(d)(3)(A)(iv) ("[T]he court for the district where compliance is required must quash or modify a subpoena that . . . subjects a person to undue burden.").  To determine whether a subpoena imposes an undue burden, courts must balance the requesting party's need for discovery against the burden imposed upon the subpoenaed party.  *Fadalla v. Life Auto Prods., Inc.*, 258 F.R.D. 501, 504 (M.D. Fla. 2007); *see also Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002) ("[T]his court is required to apply the balancing standards [when reviewing a motion to quash]—relevance, need, confidentiality, and harm.").  Courts generally consider "the relevance of the requests, the breadth of the request, the time period covered by the requests, and the particularity with which the documents are described."  *Fadalla*, 258 F.R.D. at 504; *see also In re TQ Delta*, No. 17-mc-328, 2018 WL 5033756, at *2 (D. Del. Oct. 17, 2018). Additionally, "concern for unwanted burden thrust upon non-parties is a factor entitled to *special weight* in evaluating the balance of competing needs."  *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) (emphasis added); *see also ADP*, 2017 WL 7794274, at *1 (same); *Spring Pharms., LLC v. Retrophin, Inc.*, No. 19-mc-137, 2019 WL 3731725, at *3 (E.D. Pa. Aug. 8, 2019) (same).

Here, as explained above, the documents and witness testimony sought in UTC's subpoenas are duplicative of information UTC already has obtained or will obtain in the Underlying Litigation.  And, any non-duplicative discovery UTC seeks from LGM Pharma is not relevant to any claim or defense in the Underlying Litigation.  *See* Section III.B, *supra*.  As such, UTC cannot establish a need for this discovery from a non-party and its subpoenas, and for this reason should be quashed.  *Marine Depot, Int'l, Inc. v. James River Grp., Inc.*, No. 19-CV-24821,

15

2020 WL 7493110, at *3 (S.D. Fla. Oct. 23, 2020) ("Plaintiff's requests . . . similarly, to the extent they seek relevant documents, are completely duplicative of discovery compelled from Defendant and disproportionate to the needs of this case."); *Power Integrations, Inc.*, 2006 WL 2604540, at *3 (granting motion to quash subpoena that was "cumulative to and duplicative of the previous subpoenas issued by [the Plaintiff]").

Furthermore, other than Subpoena Document Request No. 7, UTC's Document Requests and Deposition Topics provide no time limitation and therefore are exceedingly burdensome on their face. *See Am. Fed'n of State, Cnty.*, 277 F.R.D. at 478 ("[T]he document requests, which have no time limitation, are exceedingly broad and burdensome on their face."). Especially considering LGM Pharma was founded in 2005,[5] requiring LGM Pharma to conduct a comprehensive ESI collection, search, and production and prepare a witness testify as to the full time period encompassed by UTC's Subpoena Document Requests and Deposition Topics would be unduly burdensome.

Moreover, UTC's Subpoena Document Requests are entirely too broad, making it impossible for LGM Pharma to adequately conduct a comprehensive ESI collection, search, and production of responsive documents. *Am. Fed'n of State, Cnty.*, 277 F.R.D. at 478 ("The universe of information covered by these requests appears to be boundless and untethered to the claims or defenses actually at issue in the case, contrary to Rule 26."). For instance, Subpoena Document Request No. 1 seeks "*[a]ll documents, including agreements and/or memoranda of understanding*, between You and Yonsung regarding the marketing, sale, importation, or brokering activities relating to treprostinil sodium, including sales or potential sales to Liquidia." *See also* Subpoena Document Request No. 2 ("*All documents, including agreements and/or*

---

[5] *See* https://lgmpharma.com/about-lgm/company-history/ (last visited July 29, 2021).

16

*memoranda of understanding*, between You and Liquidia regarding purchasing, importation, or brokering activities relating to treprostinil sodium."); Subpoena Document Request No. 3 ("*All documents relating to the storage conditions for treprostinil sodium* (*at any point*, including during shipment or while at an LGM, Liquidia, or Yonsung facility), including any input from You to Yonsung or Liquidia regarding actual, proposed, or suggested storage conditions for the treprostinil sodium imported from Yonsung for Liquidia."); Subpoena Document Request No. 6 ("*All Documents and communications between and amongst You and Yonsung* that constitute or relate to Liquidia's orders, purchases, and/or requests to purchase treprostinil sodium.") (emphases added).  The breadth of these requests, if permitted, would require non-party LGM Pharma to expend considerable time, resources, and money to search for, produce, and prepare a witness to testify when UTC already has the requested documents, and could seek to obtain testimony from less burdensome sources, including Liquidia directly.

Similarly, the number of subjects covered by UTC's Deposition Topics are seemingly limitless, making it impossible for LGM Pharma to adequately prepare a witness.  *Am. Fed'n of State, Cnty.*, 277 F.R.D. at 478.  For instance, Deposition Topic No. 10 seeks testimony on "[t]he *subject matter of the documents produced pursuant to UTC's document subpoena* to LGM." *See also* Deposition Topic No. 1 ("*The history and current state of LGM's relationship with Yonsung*, including its discussions regarding treprostinil sodium and any agreements with Yonsung."); Deposition Topic No. 2 ("*The history and current state of LGM's relationship with Liquidia*, including its discussions regarding treprostinil sodium and any agreements with Liquidia.") (emphases added).  Requiring LGM Pharma to prepare a witness to testify as to the subject matter of each document produced by LGM Pharma in response to UTC's Document Requests, or the entire "history and current state of LGM's" relationships with Yonsung and

17

Liquidia, would be unduly burdensome and provide little if any relevant information to the Underlying Litigation.

In sum, UTC's subpoenas would require LGM Pharma to undergo a comprehensive and expensive ESI collection, search, and production and prepare potentially several witnesses to adequately respond to UTC's overly broad Deposition Topics.   These considerations are particularly egregious considering LGM Pharma is not a party to the Underlying Litigation, not involved in the manufacture of Yonsung's treprostinil sodium, and not involved the administration of Liquidia's LIQ861.  *ADP*, 2017 WL 7794274, at *1; *Spring Pharms.*, 2019 WL 3731725, at *3.

To the extent the Court grants any discovery or testimony (it should not), such discovery and testimony should be limited to activities and information related to interactions between Liquidia, LGM Pharma, and Yonsung regarding the treprostinil sodium used in Liquidia's proposed LIQ861 product.  Moreover, to the extent that the Court requires LGM to search for documents relevant to UTC's requests, LGM Pharma requests that UTC bear the cost of any search, review, and production of such documents and information responsive to UTC's requests and that the requests be limited in time to a period of not more than six years preceding the filing of the complaint in the Underling Litigation.  *In re Gladstone Consulting, Inc.*, No. 17-cv-80845, 2018 WL 7820218, at *2 (S.D. Fla. Sept. 21, 2018) ("[Rule 45(d)(2)(B)(ii)] *requires* the court compelling production to order the subpoenaing party to reimburse the non-party's cost of production, at least to some extent.") (emphasis in original).

## IV.    THE COURT SHOULD AWARD LGM PHARMA ITS REASONABLE ATTORNEYS' FEES UNDER RULE 45(D)(1)

Rule 45(d)(1) permits a non-party to recover its reasonable attorneys' fees where the party issuing the subpoena does not take reasonable steps to avoid imposing an undue burden on the person or party subject to the subpoena.  FED. R. CIV. P. 45(d)(1).  Courts regularly award such

18

attorneys' fees.  *See McMullen v. GEICO Indem. Co.*, 14–CV–62467, 2015 WL 2226537, at *9 (S.D. Fla. May 13, 2015); *see also Hallamore Corp. v. Capco Steel Corp.*, 259 F.R.D. 76, 81 (D. Del. 2009).  As explained *supra* in Section III, the documents and witness testimony sought in UTC's subpoenas are irrelevant to any claim or defense in the Underlying Litigation, are entirely duplicative of discovery already produced or being compelled in the Underlying Litigation, and are unduly burdensome on LGM Pharma.  And, as noted above, UTC did not take any steps, much less reasonable ones, to avoid imposing an undue burden on non-party LGM Pharma—rather, it seeks duplicitous discovery by seeking the same requested documents and/or testimony as sought from Liquidia or Yonsung.  Therefore, this Court should award LGM Pharma its reasonable attorneys' fees under Rule 45(d)(1).

V.    **CONCLUSION**

LGM Pharma respectfully requests that this Court enter an order transferring this motion to the District Court of Delaware or, in the alternative, quashing both subpoenas and awarding LGM Pharma its reasonable attorneys' fees in connection with this motion.

**CERTIFICATE OF GOOD FAITH COMPLIANCE**
**WITH LOCAL RULE 7.1(a)(3)**

Pursuant to Local Rule 7.1(a)(3)(A), counsel for LGM Pharma certifies that it conferred with counsel for UTC regarding the relief sought in this motion. The parties agree and consent to the transfer of the motion to the District Court for the District of Delaware, but the parties have not been able to resolve the remaining disputes presented in movant's motion to quash.

Dated: August 2, 2021                    Respectfully submitted,

By: */s/ Ana M. Barton*
Ana M. Barton (FBN 85721)
Email:  abarton@reedsmith,com
**REED SMITH LLP**
1001 Brickell Bay Drive, 9th Floor
Miami, FL 33131

19

Telephone:  +1 786 747 0200
Facsimile:  +1 786 747 0299


and

Sanya Sukduang
Jonathan R. Davies
Douglas W. Cheek
**COOLEY LLP**
1299 Pennsylvania Avenue, NW Suite 700
Washington, DC 20004-2400
(202) 776-2982
(202) 776-2049

*Attorneys for LGM Pharma, LLC*

## CERTIFICATE OF SERVICE

I certify that I caused copies of the foregoing document to be served on August 2, 2021

upon the following via email service:

**BY EMAIL**

Jack B. Blumenfeld
Michael J. Flynn
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
JBlumenfeld@mnat.com
michael.flynn@mnat.com

William C. Jackson
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
(202) 346-4216
WJackson@goodwinlaw.com

Douglas Carsten
Art Dykhuis
Jiaxiao Zhang
Katherine Pappas
MCDERMOTT WILL & EMERY LLP
18565 Jamboree Road, Suite 250
Irvine, CA 92615
(949) 851-0633
dcarsten@mwe.com
adykhuis@mwe.com
jiazhang@mwe.com
kpappas@mwe.com

Adam Burrowbridge
Joshua Revilla
Timothy M. Dunker
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street
Washington, DC 20001-1531
(202) 756-8797
aburrowbridge@mwe.com
jrevilla@mwe.com
tdunker@mwe.com

*/s/ Ana M. Barton*
Ana M. Barton